UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| UNITED STATES OF AMERICA | No. 3:26-CR-16 |
|---|---|
| v. | Judges Varlan / McCook |
| REGAN DARBY PRATER | |

## PLEA AGREEMENT

The United States of America, by the United States Attorney for the Eastern District of Tennessee, and the defendant, Regan Darby Prater, and the defendant's attorney, G. Nicholas Wallace, have agreed upon the following:

1. The defendant will waive indictment and arraignment and plead guilty to an information charging the defendant with the following offenses:

    a) Count One. Malicious Use of Fire in violation of 18 U.S.C. § 844(i). The punishment for this offense is not less than five years and up to twenty years in prison; three years of supervised release; a fine of up to $250,000; and a $100 special assessment.

    b) Count Two. Attempted Provision of Material Support to a Foreign Terrorist Organization in violation of 18 U.S.C. § 2339B. The punishment for this offense is up to twenty years in prison; a lifetime of supervised release; a fine of up to $250,000; and a $100 special assessment.

2. In consideration of the defendant's guilty plea, the United States agrees to move the Court at the time of sentencing to dismiss the indictment against the defendant in case number 3:25-CR-43.

3. The defendant has read the information, discussed the charges and possible defenses with defense counsel, and understands the crimes charged. Specifically, the elements of the offenses are as follows:

    a) Count One: Malicious Use of Fire:

        i. The defendant maliciously damaged, destroyed, or attempted to damage real or personal property;

        ii. The defendant did so or attempted to do so by means of fire; and

        iii. At the time of the fire, the real or personal property was used in interstate or foreign commerce or was used in an activity affecting interstate or foreign commerce.

    b) Count Two: Attempted Provision of Material Support to a Designated Foreign Terrorist Organization:

        i. The defendant knowingly attempted to provide material support or resources to a foreign terrorist organization;

        ii. The defendant knew that the organization was a designated foreign terrorist organization, or that the organization had engaged or was engaging in terrorist activity or terrorism; and

        iii. The offense occurred in whole or in part within the United States.

4. In support of the defendant's guilty plea, the defendant agrees and stipulates to the following facts, which satisfy the offense elements. These are the facts submitted for purposes of the defendant's guilty plea. They do not necessarily constitute all of the facts in the case. Other facts may be relevant to sentencing. Both the defendant and the United States retain the right to present additional facts to the Court to ensure a fair and appropriate sentence in this case.

2

Case 3:26-cr-00016-TAV-JEM    Document 2    Filed 02/06/26    Page 2 of 10    PageID #: 6

a) The Highlander Research and Education Center ("Highlander") is a nonprofit educational institution located in New Market, Tennessee, within the Eastern District of Tennessee.

b) Highlander, founded as a folk school in 1932 on principles rooted in the Christian Social Gospel movement, maintains a strong emphasis on faith-based educational priorities and cultural work, including social justice, equality, and sustainability issues. Highlander had a particularly important role during the Civil Rights Movement of the 1950s and 1960s. Highlander's current campus spans approximately 186 acres in New Market and can accommodate 35 guests, with additional space for camping. Highlander regularly hosts in-person workshops. For example, the Children's Justice Camp is a one-week long session for youth ages 6-12. The youth directors for this program come from Tennessee and several surrounding states. Highlander also rents, for a fee, their facility to other organizations working for social and economic justice. That fee can include overnight lodging with bedding and bath supplies and meals. By sponsoring in-person workshops and hosting other organizations, Highlander is involved in interstate commerce including the transportation of goods, services, and money across state borders.

c) On March 29, 2019, the defendant drove from his home in Tullahoma, Tennessee, to Highlander. There, he broke into the administrative building of Highlander, located at 1959 Highlander Way, New Market, Tennessee. The defendant then intentionally and maliciously placed a sparkler bomb inside the administrative building and lit the fuse, with the intention of causing the sparkler bomb to detonate.

d) A sparkler bomb is a napalm-based incendiary device that utilizes a common sparkler firework as a fuse.

3

e) The sparkler bomb detonated as the defendant intended, setting fire to the administrative building. The fire completely destroyed the building, resulting in $1,289,000 in damage.

f) As detailed above, at the time of the fire, the administrative building was used in interstate commerce and was used in activities affecting interstate commerce.

g) Prior to detonating the sparkler bomb, the defendant spraypainted the symbol of the Iron Guard on the ground in Highlander's parking lot. The defendant knew at that time that the Iron Guard was the paramilitary arm of the Romanian Nazi Party in the 1930s. The defendant also knew at that time that the same symbol of the Iron Guard was engraved on the receiver of the rifle used in the terrorist attacks in Christchurch, New Zealand, two weeks prior that claimed the lives of 51 people.

h) The defendant selected Highlander for his arson attack because of his white supremacist beliefs and his perception of Highlander's faith-based educational priorities and its association with the Civil Rights Movement. The defendant spraypainted this symbol to overtly associate the arson of Highlander with the defendant's pro-Nazi ideology.

i) Separately, on or about October 27, 2019, in the Eastern District of Tennessee and elsewhere, the defendant attempted to provide material support or resources, specifically a list of personally identifiable information for individuals purportedly affiliated with the government of Israel, to Hizballah.

j) During the timeframe alleged in the information, the defendant obtained a pdf document containing personally identifiable information for over 35,000 individuals purportedly affiliated with the government of Israel. Thereafter, the defendant provided the pdf document to an individual he believed was affiliated with Hizballah.

k)  In connection with providing the pdf, the defendant stated, "As I promised, enjoy. And for the Hezbollah or other pals living in the zone; Start the hunt." The defendant also stated, "I hope the information in the pdf helps you guys against Israel."

l)  At all relevant times, Hizballah was designated by the Secretary of State as a foreign terrorist organization pursuant to Section 219 of the Immigration and Nationality Act.

m)  At all relevant times, the defendant knew that Hizballah was a designated foreign terrorist organization, or that the organization had engaged or was engaging in terrorist activity or terrorism.

5.  The defendant is pleading guilty because the defendant is in fact guilty. The defendant understands that, by pleading guilty, the defendant is giving up several rights, including:

a)  the right to be indicted by a grand jury for these crimes;

b)  the right to plead not guilty;

c)  the right to a speedy and public trial by jury;

d)  the right to assistance of counsel at trial;

e)  the right to be presumed innocent and to have the burden of proof placed on the United States to prove the defendant guilty beyond a reasonable doubt;

f)  the right to confront and cross-examine witnesses against the defendant;

g)  the right to testify on one's own behalf, to present evidence in opposition to the charges, and to compel the attendance of witnesses; and

h)  the right not to testify and to have that choice not used against the defendant.

5

6. Pursuant to Rule 11(c)(1)(C), the defendant and the United States agree that a sentence not greater than 240 months in prison is the appropriate disposition of this case. Nothing in this plea agreement restricts the defendant's ability to argue for a specific sentence below 240 months in prison. Additionally, the Court may impose any lawful fine and any special assessment fees as required by law, and order restitution as appropriate. In the event the Court declines to accept this agreement, either party will be free to withdraw from the plea agreement.

7. Given the defendant's agreement to plead guilty, the United States will not oppose a two-level reduction for acceptance of responsibility under the provisions of Section 3E1.1(a) of the Sentencing Guidelines. Further, if the defendant's offense level is 16 or greater, and the defendant is awarded the two-level reduction pursuant to Section 3E1.1(a), the United States agrees to move, at or before the time of sentencing, the Court to decrease the offense level by one additional level pursuant to Section 3E1.1(b) of the Sentencing Guidelines. Should the defendant engage in any conduct or make any statements that are inconsistent with accepting responsibility for the defendant's offense(s), including violations of conditions of release or the commission of any additional offense(s) prior to sentencing, the United States will be free to decline to make such motion, to withdraw that motion if already made, and to recommend to the Court that the defendant not receive any reduction for acceptance of responsibility under Section 3E1.1 of the Sentencing Guidelines.

8. The defendant agrees to pay the special assessments in this case prior to sentencing.

9. The defendant agrees that the Court shall order restitution, pursuant to any applicable provision of law, for any loss caused to: (1) the victim of any offense charged in this case (including dismissed counts); and (2) the victim of any criminal activity that was part of the same course of conduct or common scheme or plan as the defendant's charged offenses.

10. **Financial Obligations.** The defendant agrees to pay all fines and/or restitution to the Clerk of Court. The defendant also agrees that the full fine and/or restitution amount(s) shall be considered due and payable immediately. If the defendant cannot pay the full amount immediately and is placed in custody or under the supervision of the Probation Office at any time, the defendant agrees that the Bureau of Prisons and the Probation Office will have the authority to establish payment schedules to ensure payment of the fine and/or restitution. The defendant further agrees to cooperate fully in efforts to collect any financial obligation imposed by the Court by set-off of federal payments, execution on non-exempt property, and any other means the United States deems appropriate. The defendant and counsel also agree that the defendant may be contacted post-judgment regarding the collection of any financial obligation imposed by the Court without notifying the defendant's counsel and outside the presence of the defendant's counsel. In order to facilitate the collection of financial obligations to be imposed with this prosecution, the defendant agrees to disclose fully all assets in which the defendant has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, nominee, or other third party. In furtherance of this agreement, the defendant additionally agrees to the following specific terms and conditions:

    a) If so requested by the United States, the defendant will promptly submit a completed financial statement to the U.S. Attorney's Office, in a form it provides and as it directs. The defendant promises that such financial statement and disclosures will be complete, accurate, and truthful.

    b) The defendant expressly authorizes the U.S. Attorney's Office to obtain a credit report on the defendant in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

7

c)  If so requested by the United States, the defendant will promptly execute authorizations on forms provided by the U.S. Attorney's Office to permit the U.S. Attorney's Office to obtain financial and tax records of the defendant.

11. The defendant voluntarily, knowingly, and intentionally agrees to the following:

a)  The defendant will not file a direct appeal of the defendant's conviction(s) or sentence unless the sentence exceeds 240 months in prison.

b)  The defendant will not file any motions or pleadings pursuant to 28 U.S.C. § 2255 or otherwise collaterally attack the defendant's conviction(s) or sentence, with two exceptions: The defendant retains the right to file a § 2255 motion as to (i) prosecutorial misconduct and (ii) ineffective assistance of counsel.

c)  The defendant will not, whether directly or by a representative, request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including, without limitation, any records that may be sought under the Freedom of Information Act, 5 U.S.C. Section 552, or the Privacy Act of 1974, 5 U.S.C. Section 552a.

12. The defendant recognizes that pleading guilty may have consequences with respect to the defendant's immigration status if the defendant is not a citizen of the United States. Under federal law, a broad range of crimes are removable offenses. Removal and other immigration consequences are the subject of a separate proceeding, however, and the defendant understands that no one, including his attorney or the Court, can predict to a certainty the effect of the defendant's conviction on immigration status. The defendant nevertheless affirms that the defendant wants to plead guilty regardless of any immigration consequences the plea may entail, even if the consequence is automatic removal from the United States.

13. This plea agreement becomes effective once it is signed by the parties and is not contingent on the defendant's entry of a guilty plea. If the United States violates the terms of this plea agreement, the defendant will have the right to withdraw from this agreement. If the defendant violates the terms of this plea agreement in any way (including but not limited to failing to enter guilty pleas as agreed herein, moving to withdraw guilty pleas after entry, or by violating any court order or any local, state or federal law pending the resolution of this case), then the United States will have the right to void any or all parts of the agreement and may also enforce whatever parts of the agreement it chooses. In addition, the United States may prosecute the defendant for any and all federal crimes that the defendant committed related to this case, including any charges that were dismissed and any other charges which the United States agreed not to pursue. The defendant expressly waives any statute of limitations defense and any constitutional or speedy trial or double jeopardy defense to such a prosecution. The defendant also understands that a violation of this plea agreement by the defendant does not entitle the defendant to withdraw the defendant's guilty pleas in this case.

14. The United States will file a supplement in this case, as required in every case by the Local Rules of the United States District Court for the Eastern District of Tennessee, even though there may or may not be any additional terms. If additional terms are included in the supplement, they are hereby fully incorporated herein.

15. This plea agreement and supplement constitute the full and complete agreement and understanding between the parties concerning the defendant's guilty plea to the above-referenced charges, and there are no other agreements, promises, undertakings, or understandings between the defendant and the United States. The parties understand and agree that the terms of this plea agreement can be modified only in writing signed by all of the parties and that any and all other

9

promises, representations, and statements whether made before, contemporaneous with, or after this agreement, are null and void.

FRANCIS M. HAMILTON III
UNITED STATES ATTORNEY

2/3/2026
Date

By: *[signature]*

Casey T. Arrowood
Kyle J. Wilson
Assistant United States Attorneys

HARMEET K. DHILLON
ASSISTANT ATTORNEY GENERAL
CIVIL RIGHTS DIVISION

2/3/2026
Date

By: *[signature]*

For Katherine McCallister
Trial Attorney

JOHN A. EISENBERG
ASSISTANT ATTORNEY GENERAL
NATIONAL SECURITY DIVISION

2/3/2026
Date

By: *[signature]*

For Justin Sher
Trial Attorney

1/29/2026
Date

*[signature]*

Regan Darby Prater
Defendant

1/30/2026
Date

*[signature]*

G. Nicholas Wallace
Attorney for the Defendant

10